Department of Homeland Security, et al. Ms. Ross for the amicus curiae, Mr. Birch for the affilies. May it please the Court, Erica Ross has court-appointed amicus in support of Appellant Osama Abdelfattah. Over 15 years ago, Mr. Abdelfattah briefly shared an apartment with a man who later became of interest to the United States following the 9-11 attacks. Even though Mr. Abdelfattah has no ongoing relationship with this man and no criminal record, the government maintains his personal information in a database known as TEEX, which Mr. Abdelfattah alleges. Just to be sure, there's no contest about the truth of the particular factual proposition that is the focus of this case? That's correct, Judge Williams. There's no question that the information that is in TEEX, including Mr. Abdelfattah's prior address, which links him to this man, is factually accurate. But we would submit, as we do in the briefs, that that's not actually a precondition for Mr. Abdelfattah to either state a claim for relief or to, in fact, receive that relief. This Court made clear in Chastain v. Kelly that inaccuracy is only one of several bases on which an order for amendment or expungement may be based. And such an order may also be And in this case, we would argue that that's exactly what Mr. Abdelfattah alleges. He alleges that this information is highly prejudicial because it associates him with a person of interest in the 9-11 attacks. And it has, in fact, been used over time to interfere with his right to work and his right to travel and to harass and to detain him. In addition, how do you, Mr. Ross, how do you understand Chastain on the following axis, which is that it seems like what the predicate to the language that you rely on was is that this is a remedy for a violation of a legal right. And so we're going to talk about the conditions under which this particular remedy can be imposed. But there's an antecedent question as to whether there's a violation of a legal right in the first place. And then we can talk about expungement. But it's not as if there's a freestanding constitutional entitlement to have expungement divorced from the predicate question of whether there's a due process violation in the first place. To respond to that, Your Honor, in Chastain, the gentleman, the plaintiff, had alleged a variety of legal wrongs, as you suggest. But the court, the district court, actually found that the case was moot because during the pendency of the case, the individual had been reinstated. And so this court held that all of his alleged injuries and all of those constitutional and statutory violations were, in fact, redressed when the plaintiff was reinstated with back pay. And so I don't think in Chastain this court actually was suggesting that the expungement remedy had to be only a remedy for one of those specific violations. I think what the court was saying is that there is a right, and we would place it in the due process clause, as you suggest, to be free of information that is unduly prejudicial without serving a government purpose, even if, as in Chastain, all prior violations have been redressed. So you read that language, the third criteria, prejudicial without serving any proper purpose, as an encapsulation of the due process standard? I do. And so then you would also say that the possession of inaccurate information by the government is also a due process violation? I think that what Chastain is saying is that the possession of the inaccurate information, if it is causing additional harms, as would be the case in Chastain, the information actually was accurate. But in some cases, it would be inaccurate and causing additional harms to the individual could be sufficient to save the due process interest, yes. Where are you getting the causing additional harms from? I think from the context of the case and also from the subsequent cases that go on to say that under Chastain, you have to engage in sort of a balancing analysis where you would consider the harm to the individual as compared to the government's interest in retaining the information. And so in cases like Hobson and Doe v. United States Air Force, this court has said that it's sort of a balancing of interests. And so I think that the balancing sort of only makes sense if you think that some harm has to be coming from the information. And I think as in Chastain and in this case, it's sort of clear that the harm is this potential future use from the information that's in the government records. So in this case, Mr. Abdel Fattah has in the past had his access to work and immigration documents delayed and denied because of this information. He has had his access to travel interfered with. He's been detained. He's been harassed. And so we do think that in this case, certainly the prejudice is very clear. So can I ask you a question about that, which is that it seems like the case is being litigated on the assumption, and I know that there's some uncertainty about exactly what the state of affairs are, but on the assumption that at this point, he possesses a green card, the physical green card. I think that we have sort of assumed that at this point. I don't think the complaint is entirely clear as to that point, as you suggest. But I also don't think that that's dispositive either way. The record is clear that Mr. Abdel Fattah, even after gaining LPR status, had no access to the documents that would demonstrate that status for a period of three years from 2004 to 2007. And it's equally clear that Mr. Abdel Fattah alleges a well-founded fear that he would have the same problems accessing those documents in the future. With respect to, for example, his right to work, so as I understand it, if you have a green card, you don't need an employment authorization or anything like that. You've got the green card, right? So if he has the physical green card at this point, or at least the case is litigated on that assumption, then what is the future interference with his right to work? So that, his LPR status and his access to a green card has to be renewed at set intervals, and the government has actually, he alleges, threatened to take away his green card in the past. And so even if he has the green card today, which again, I don't think is clear from the face of the complaint, he is in very real risk of not gaining, of being prohibited from getting a renewal or from having the government simply take away the document in the future. And when it does that, if it does that, he would not be able to work. He's actually required to carry this document with him, and so it would open up all kinds of other potential legal harms. I would also note that in addition to his work-related issues, Mr. Abdel-Fattah has alleged an inability to travel abroad, including to visit family in Jordan, and that he's been harassed and detained, and that he has a well-founded fear even of returning to an immigration office the next time he needs some sort of work authorization document. And so I think that... As to that, if he possesses a green card, you can get back in the country, but the fear you would suggest would be that there's at least some, you think, credibly founded fear at this point, for purposes of the motion to dismiss stage, that the green card might be taken away when he tries to get back in. I think it's one of two things. So as you suggest, Judge Srinivasan, it could be the case that the green card could be taken away when he tries to get back in. But I think the other fear that Mr. Abdel-Fattah has, and I do think it's credible, is that the green card could be taken away when he tries to fly back into the United States as part of the Advanced Passenger Information System. And so Mr. Abdel-Fattah could be stopped even with a green card. We know from the no-fly list cases, like Lateef in the District of Oregon, which we cite in our briefs, and Mohamed, which we also cite from the Eastern District of Virginia, that citizens and lawful permanent residents are on the no-fly list and can be stopped from reentering the country. And so similarly here, I don't think the fact that Mr. Abdel-Fattah may at the moment have a physical green card would prohibit the government necessarily from stopping him from returning to the United States if he travels abroad. And of course, at that point, that would cause all kinds of problems for Mr. Abdel-Fattah, including just the inability to litigate this case at that point. If I could, we've sort of touched on it a little bit, but I do think that this case has sort of some fundamental similarities to Lateef and Mohamed and the no-fly list cases more generally, because what Mr. Abdel-Fattah is ultimately asking for here is really no more than the opportunity at some point in some manner to contest the inclusion of his information in this government database and all of the many harms that have resulted from that inclusion. That seems to be the tricky part of your claim, all the harms that have resulted. We have a piece of truthful information and then there are various government acts which certainly are harmful to your client and let's assume are unlawful, abuses of discretion and so forth. But yes, it's clear, I guess it's clear that this item of information plays a role in it, but it's hard for me to imagine that somehow scrounging that out of the government files is going to give him, well certainly not complete protection against such government abuses. Most would sort of change the odds. And I question whether it would change the odds very drastically. Well I think Your Honor makes an interesting point and what I would say in response is that the expungement remedy as this court recognized in Chastain is a quote versatile tool. It's a very flexible remedy that the district court on proper facts could apply in all sorts of ways. And so it would not necessarily mean that the piece of information would simply be plucked and everything else would stay in place. It's possible that the district court could order amendment of the records to show that even if the address information remains that Mr. Abdel-Fattah has been investigated in the past and does not pose, does not currently pose any sort of threat such that these individual government abuses are not necessary. It's not required to detain him whenever he comes to an immigration office. I guess it seems to be more figurative of a free floating right to cleanse government files without regard to what may happen or what has happened. Not completely without regard because you do have undoubtedly this record of, at least by the allegations, misuse of the information. But to turn that into a floating right to cleanse government records of truthful information, even if we extend it to contextually, I don't know that Chastain takes us there to expungement of additional information or putting in affirmative alternatives, that in a way makes it more a sort of risk of endless penetration of government records on a fairly flimsy basis. I'd make two responses to that, Your Honor. The first is that I don't think that it's sort of a free floating remedy here. Well, that was my adjective. Do you use a similar adjective for Chastain? I forget your exact adjective. Well, I think Chastain unfortunately doesn't provide as much detail as one might hope with respect to the source of the right that it's talking about. But I don't think it's free floating. As I said, I do think it finds its grounding in the due process clause. And I think it can be grounded in that flow. It might, Your Honor. But I do think it's quite similar to the substantive due process cases that we cite in our briefs that really do establish the principle that there is some protection for individuals from arbitrary government action, which is what Mr. Abdel Fattah is alleging here. Well, that is a question that I really had because it sounds as if at one point you were really arguing for a procedural due process, that is, for his opportunity at some point to challenge this. But then it also seems as if you view this as substantive due process and therefore you're arguing that government arbitrariness, you know, in and of itself gives rise to this opportunity to remedy it. And it's really difficult for me to go into grasp what is the claim here and the source of the claim. Sure. So I think that the difficulty may stem from the fact that we believe that both of those rights are at stake here. And so while I think Chastain is probably best thought of as an articulation of substantive due process principles, I also think that relying on cases like the no-fly list cases, but also this Court's decision in National Council of Resistance of Iran and the recent decision in Rawls Corporation, that procedural due process is also very much at play here because Mr. Abdel Fattah has received no opportunity to contest the information that is in teaks that's causing him all of this trouble. When you say contest, I mean, that would be so much more powerful if there were any suggestion that were untrue. Well, Your Honor, I think in the Privacy Act context, for example, we know that individuals can argue that their information is unnecessary or irrelevant. And so I think that the same thing would happen here. Now, obviously, teaks has been removed from the Privacy Act protections. But again, as we know from this Court's cases like Rawls Corporation and others, that doesn't mean that Mr. Abdel Fattah is without recourse for his constitutional claims. I see that I've eaten up basically all of my time. So if the Court has no further questions, I'll reserve. Actually, I wanted to ask you about the statutory claims a little bit. So for both of the statutes, the Privacy Act and FCRA, there are provisions that allow for the government to obtain access to information if it's connected to a terrorism investigation. And my question is this. The facts that are alleged sort of seem self-evidently to bring it within the compass of that potential use of authority. Now, I know we don't know how the government got hold of the information here, and that's the source of the dispute. But in Iqbal, there was also a question. We didn't know whether the reason that the policy existed was because of discriminatory intent. And the Supreme Court just looked at the lay of the land and just said, yes, he's alleged discriminatory intent, but it's really likely that this is actually just, well, it's understood why there would be a disparate impact on Arab Americans because of the nature of events that gave rise to this. And so we don't think it's likely enough to get past the plausibility threshold to carry the complaint past the 12b6 stage. And it seems somewhat parallel to me, because here you could say, by similar reasoning, there's these provisions that give the government the authority to do this, and the allegations in the complaint already implicate those provisions by their very nature. So we don't think it's likely enough that the government got the information through some ill-gotten means that violates the statute, but rather that the likely way they got the information was through the use of these terrorism provisions. Understood, Your Honor. I think the first point that I make in response to that is that while that might be a very good argument, the government hasn't made it. It didn't make it in the district court. It doesn't make it here. And so I don't think particularly with a pro se plaintiff on the other side, it's really quite the right time to make that plausible, in part because we don't know exactly when this information was obtained, and so we don't know that it sort of is part and parcel of the Teek's record and sort of the creation of the record with respect to the former roommate. And so I think at the very least, this, much like Mr. Abdel-Fattah's other claims, could really benefit from more facts in the district court on a remand. Just a couple of things. On the Fair Credit Reporting Act, we don't have, I mean, just in terms of, apart from the allegations, there's no reason at all to think that the credit card came as a communication by a consumer reporting agency. And that seems a real stretch. Well, Your Honor, I don't think it's necessarily a stretch simply because this court has really broadly interpreted, the statute itself is rather broad in terms of what a consumer report is defined to be. No, no, I take your point on consumer report. It's a consumer reporting agency. It hasn't Right. And to my understanding, the only argument that the government makes that this would not be a consumer reporting agency is that it came from the, I'm sorry, that it came from the, sorry, that it came from the credit reporting agency, or sorry, we think that it is very plausible that it came from the credit card company and that that would qualify. As a consumer reporting agency? I believe so, Your Honor, although I could be mistaken on that point. So I have a question about this. So the one thing that confused me a little bit about this is that on the Privacy Act, I took the government's, and maybe we should ask the government this, but I took the government's point to be that if you look at the plaintiff's own pleadings, the reasonable inference is that the information came from a credit bureau. Right. But is a credit bureau the same thing as a consumer reporting agency, or are they, how does the Venn diagram work between those two? Because if it is, then it seems like at that point, it's at least plausible that it came from a consumer reporting agency for purposes of the FCRA claim. Right. My understanding is that the government contends that it's not the same thing, that the credit reporting agency is not the… A credit bureau? The credit bureau, right, that the credit bureau is not the… And do you have a view on that? I don't, Your Honor. I apologize. I think that the, that our view on this is in our briefs, and I apologize for not having more on that. I'm sorry. I have one other question about the FCRA claim, if I could, which is that he's seeking damages in the complaint for the statutory violations. Correct. So in order to, in order for that claim to be successful, we'd have to conclude that  Correct. there were no damages against the government, and is that something that you've examined or, I think, I believe there's a Seventh Circuit case that says that there is a waiver of sovereign immunity under FCRA, but I don't know if you had it. No, that's the only thing I'm aware of, Your Honor, that and the fact that the government obviously hasn't raised that with respect to this claim. Which shouldn't matter, because I think it's jurisdictional, is that not? It may not, Your Honor. I only mean to say that because if the government had a case that said that there wasn't, I imagine they would have brought that forth. Got it. One of the problems is that the Right to Financial Privacy Act, you aren't claiming, are you, or are you, that it doesn't make any difference where DHS got the credit card number for purposes of that claim? No, that is not our argument, Your Honor. Our argument is that financial institution is a plausible source of it. Yes, exactly. Our argument is just that Mr. Abdel-Fattah does not need to sue both the financial institution that provides the information and the government entity that receives it. Doesn't he need to at least allege that a financial institution was the source? He does, Your Honor, and he does allege that, I believe. What he doesn't do is identify which financial institution that would be. But again, at this stage, we think that that's a plausible enough allegation, because he's able to rule out certain other ways in which the government could have obtained the information. For example, he knows that it didn't come from him, and he has, to his knowledge,  And so we think that just sort of at this stage in the proceedings that that is a plausible allegation. Thank you. Thank you. May it please the Court, Allen Birch for the government. I'd like to address just disability briefly before moving on to Chastain. I wanted to touch very briefly on mootness to make the point that we may not brief, which was that to the extent that the claims that Abdel-Fattah is pressing here rely on his actual status, those claims should be deemed moot, because he does have the status of a legal permanent resident. He does have the green card. How do we know that he has a green card? Well, he says he has a green card. And he also says that he's working. I guess I saw the allegations that he has a green card in the complaint. I also saw a bunch of allegations that suggested he doesn't have a green card. Well, he says that he has it. He says it in several places. He says he was approved for it, and he says that he had difficulty getting proof of it and that there were threats to take it, the card itself, away. But he also alleges that he has it and that he's working. So when you say he has a green card, do you mean that he has the physical green card, or do you just mean he has the status of having a green card? I interpret it narrowly that it's just the status. You're talking about the status? Yes. Okay. And that's my mootness argument. To the extent that it depends on his actual status, those claims are moot. And so the remaining claims would need to be of a much less substantial nature. For example, I don't have the physical card, or I'm being subject to difficulties, or I've been interrogated, rather than the denial of his status. I see the claim as being that government has this information, bad uses have been made, the government has made bad uses of it for a substantial period, and you in your brief said, well, there's nothing after 2007, but that's when the complaint was filed. So it would be hard for there to be allegations for bad use happening after 2007. Not at all, Your Honor. You certainly can file supplemental claims. Well, we could. And, you know, some of the, I mean, you can get to the merits of the specifics of the claims, but some of the threats that he says he doesn't tie them to the information about his rooming with al-Rababa, but instead some of them relate to that he's pleading on his retaliation for filing a separate lawsuit in New Jersey. If you look at his complaint, paragraph 191, he talks about being threatened with deportation by an FBI agent at his home and about the FBI agent visiting his workplace, and both of those are explicitly tied to this retaliation claim that he has not pressed on appeal for filing a New Jersey lawsuit. My primary point in raising it, though, is to more clearly focus what the substance of the allegation is, and the substance would be these threats, and that the threats simply do not rise to the level of a cognizable claim under the Due Process Clause, even if they were justiciable, that they're insubstantial on the merits. So that's the reason why I raised the Muniz argument, to clarify what is the actual substance of the complaint. What do you mean by the threats are not sufficiently substantial? Do you mean even if carried out? No. Well, if carried out would be a different claim, but the threat, a mere threat, an FBI agent or an immigration agent, you know, we're going to deport you, that's never been held to be cognizable as a violation of the due process. Oh, I thought you were talking about the threat that he perceives, because I take it the threat that he perceives is that he's going to be, and I don't want to place too pejorative of a gloss on it, but that he's going to be hassled, but it's a significant hassle. Much of the immigration process is a significant hassle, unfortunately. It would have been over and above the normal, and so he talks about potential detention based on past periods of detention. Yes, but none of this would rise to the level of a due process violation in terms of there being, on a substantive due process level, for example, minimum rationality. Of course, there are legitimate government purposes in continuing to question someone who has had this prior association. That's an easy call under a minimum rationality review, which is where we're at on the merits. The government has obvious interest in retaining accurate information, so that it can have a set of dots to connect the dots on the terrorism investigation down the road. That's exactly what this case is all about, is the government's ability to connect the dots without having somebody come in and say, I think you should erase this dot, because it results in me getting questioned. So even if somebody has a green card, then every time they apply for renewal of the green card or try to come back in the country, there's no due process problem whatsoever with detaining them. It would depend on how long, but with respect to them being questioned. At the motion to dismiss stage, we already know that there can't be a due process claim. Sorry? At the motion to dismiss stage, we already know that there can't be a due process claim. Based on his factual allegations, yes. I would hearken you back to the Iqbal discussion that you had with Ms. Ross. The nature of the allegations here are simply not severe enough to state a claim. What if the information on which the government had acted in the past was transparently wrong and highly prejudicial on its face? Right. If mistakenly taken as true, it characterized him as an ardent jihadist, ready to explode bombs. Then it would look a lot more like the no-fly cases. That's the key distinction here between the no-fly cases and this case, is that the information is, in fact, accurate. But if it were inaccurate, then it would, again, to trigger a due process violation, you would need to have some sort of liberty interest or property interest that was significant enough to be cognizable. There are, of course, other limits other than the due process clause on what the government can do with accurate or inaccurate information. And so simply to say that this doesn't state a claim for a chastain remedy based on a due process violation is not to say that there are no limits. With respect to this disability, I would like to make one other point that I did not make in my brief, which is that the credit card information, I believe, does not, that Abdel Fattah cannot establish a addressability or causation with respect to the credit card information. Everything in his complaint ties all of the difficulties he's had to the association with al-Rababa, and none of it is tied back to the credit card information. As I understand it, the credit card claims are based simply on the two statutes. Yes. I should clarify, to the extent that it's a constitutional claim. Right. Exactly. Can you answer my question, by the way? I don't mean to mess up your order, but on the statutory claims? Oh, sure. Is a credit bureau different from a credit, or at least different enough at the 12v6 stage that it seems odd to me to say that we look at his Privacy Act claim and we think, well, it's very plausible that the information came from a credit bureau, but then we look at his FICRA claim and we say it's implausible to think that it came from a credit reporting agency. Okay. I think the confusion here is that we don't make that particular argument on the FICRA claim. Our argument there is that the credit card number is not the information that's included in a credit report. Suppose we disagree with you on that, and I don't mean to predominate your argument on that, but if we disagree with you on that, and the question is the one that Judge Williams was asking about, which is did the information come from a credit reporting agency? As to that, does your argument that we assume under the Privacy Act that it came from a credit bureau mean that it gives life to the FICRA claim because then it looks like it came from the entity that it's supposed to come from for purposes of a FICRA claim? I don't know, Your Honor, and I would request the opportunity to brief that. And I respectfully suggest that the Posting Council is confused about the overlap of the claims here, but the parties haven't addressed that. It's not a question that I'm prepared to answer because the two statutory definitions may well be different, and so I just don't know. It's not an argument anybody has put forward so far in this litigation. But it's not necessary to vindicate our position based on the total lack of any case law authority or otherwise to show that the credit card number itself is within the statutory definition. Well, I don't understand that because a credit card number, I'd certainly want to know if I was deciding whether to extend somebody credit whether they have a credit card because a credit card number tells you that they've gotten credit. So it does seem to fall within the statutory definition because it bears on credit worthiness. But the breadth of that is somewhat breathtaking and it has never been upheld. I mean, it would go to the disclosure of, you know, from a merchant, which is simply not what the Credit Reporting Act had in mind. I don't understand what you mean. It seems like credit card numbers is a type of information that fits within the statutory definition. I think it's a stretch because it would fit the same way as sort of, you know, simply the name or just the fact that, you know, I have a credit card. But that doesn't fit within the examples given within the statutory language, and there's no case law authority for it. So I think that would be quite a stretch, and it would take it well beyond the purposes of regulating the credit reporting agencies, which is what the statute is aimed at rather than simply merchants or even consumers themselves. It just says communication of any information by credit consumer reporting agencies. We've dealt with that. Bearing on a consumer's credit worthiness. Right, and I don't believe that there's any sort of practice in the industry of using a credit card number as an indicia of credit worthiness. And so it just doesn't, and there's no authority for it. So it doesn't make a lot of sense to view it that broadly. The only other point I wanted to make on the merits was just the Chastain point, which I think has already been well illustrated. Our main issue there is that it is not simply a standalone cause of action. It needs to be tied to an actual violation of some other existing cause of action, such as a due process claim, which seemed to me to be the most plausible. That's why we briefed it that way, and the other side's amicus seems to agree that that's what these claims are based on. I would point you to the Doe case cited in both briefs as an example of the Chastain remedy being considered in a Fourth Amendment context. But there it's much clearer in Doe that it's used as a remedy to a different, an entity called a cause of action under the Fourth Amendment, and that's what we're arguing for here. It should not be untethered from any of the violations. In order for him to state a claim here, he should have to show the elements of a due process claim, alleged facts that would make it plausible that the due process cause has been violated. My intention basically is that Chastain represents a holding in this court that possession of information where there is not any proper governmental use to be foreseen for it is inherent in such a violation. I'm sorry, what was the first one? You think it could be read that way? We can hear it from her off the rebuttal, but I took the argument to be that the government possession of truthful information for which the government does not have any proper purpose, I think those are the exact words of Chastain, is inherently a due process. That was the suspicion that we had of their position going in, and that's why we argued against that. I think in their reply brief, I would point you to their concession on page 7 in footnote 2, where at least as an alternative position they say, yes, it should be considered as attached to the due process claim. And based on what you said in the oral argument, I would take that as confirmation that they don't see it as a stand-alone cause of action. But to the extent that it could be read that way, I think that's been addressed in our brief, that it does not have support in the case law. The Supreme Court's decisions don't support that, and this Court's decision in AFGE certainly does not support that, particularly the second quoted language in my brief that I quoted on page 16 of my brief. The response that AMICUS had to the AFGE quote was that it should be limited to cases where the government is disclosing the information, and that that's what makes this case different, and that the government is using it without disclosing it. But indeed, the second quote in AFGE addresses the nondisclosure example as well, and says that individual interest in protecting the privacy of information sought by the government is significantly less important where the information is collected by the government but not disseminated publicly. In fact, employees cite to no case in which a court has found a violation of the constitutional right to privacy where the government has collected but not disseminated information. And so indeed, the notion that they... Do you think that... Sorry? Do you think that overruled Chastain? Well, I think it's kind of a case of battling dicta on some level, but it certainly suggests... Well, no, I... But... In Chastain, it's a direction to the lower court to what rule to apply. It's not a very clearly fleshed out rule. No, but I would... To the extent that the whole... Well, I think, as I explained in my brief, I think the core of the holding in Chastain was that the government needed in district court to be given a chance to respond to the theories, including... That's undoubtedly part of the holding. Well, and that's why the language in Chastain says there may exist such a right. It does not say there is such a right. It says there may exist such a right. And the government did not, perhaps because it missed a deadline, but did not respond below to the motion to expunge. And this court said the government should have the opportunity to respond on the merits. There may exist such a right. If there is such a right, it may look like this. And so... I mean, the wording is such a right may exist if... Right. And the three possibilities laid out. Of course. You're saying the may travels down through all three. Exactly. And to the extent that you want to look elsewhere to find Chastain overruled, I think you would look to the language in the Supreme Court decisions discussed in the AFG case, such as Whelan. Are there no further questions we would ask the court? I have a question about the Privacy Act. Sure. The argument, your argument, the information isn't the type of information we care about for purposes of FCRA, doesn't apply with respect to the Privacy Act. The Right to Financial Privacy Act. Yeah, the Right to Financial Privacy Act. Right. The Right to Financial Privacy Act argument is the source of the information. So as to that, so a plaintiff says, I have proof positive that, or at least I'm alleging, and nobody disputes this, that the government has information that comes within the compass of the Right to Financial Privacy Act. And I don't know. I mean, I think it probably came from a financial institution, but I have no idea. I can't be sure of that, but I'm alleging that it did. That it did. That it came from a financial institution. A financial institution. Yeah. And at the motion to dismiss stage, what are we supposed to do to figure out whether it's likely enough that it came from a financial institution to get past 12b-6? Well, I don't think that's a fair reading of the complaint here, Your Honor, because here the complaint says that on information and belief, the only way they could get this is through a credit card, is through a credit report. Where does he say that? From a credit reporting agency. Yeah. No, because that gets you in trouble in FCRA. But that was the point we were talking about earlier. But I'm just saying, let's just suppose. Let's just suppose. I take your point. I'm just saying. I'm being facetious. I take your point. But let's just suppose you have a situation in which the allegation is that the government has this information. Right. Okay. And the right to financial privacy act gives me a cause of action for circumstances in which that information came from a financial institution. Right. I believe it came from a financial institution. Then I think you're in the Twombly-Iqbal scenario that you described earlier. You have to look at the broader context of what are all the plausible sources and what are the actual factual allegations he has made that would govern the court's ability to make a determination of plausibility. Merely saying, I believe, does not give the court any ability to assess the plausibility of that. That's, I think, the core holding of Iqbal. They need to put in facts that give the court the ability to make an analysis, not simply the point. At the motion to dismiss, they believe. So what if he says he just alleges it came from a financial institution? Well. Take out I believe because maybe that's unnecessarily. But it came from a financial institution. That's my allegation. Every allegation is just what I believe, but it came from a financial institution. He would be subject to the pleading standards would require that you have a good faith basis for that. But I think you would have to take that more seriously. And would that get past 12 v. 6, do you think? It would be a closer call, but I don't know. Because it depends on the rest of the factual situations he's laying out. It may well be that the factual situations you described would imply other sources of information. Here, for example, in the immigration context, when you apply for immigration adjustment status, you go to lots of different interviews and it's certainly possible that one of those could hit on you. Do you have a credit card? How well established are you in your community? Do you have a bank account? Do you have a library card? At least in the immigration process, do you sometimes pay for the services you're getting with a credit card? I don't know enough about it in particular, Your Honor. But I would assume that certainly on a constitutional level, that kind of inquiry would be perfectly permissible and serve a perfectly valid government interest. Oh, yeah, no, just in terms of probability. Yeah, it just seems like we're sort of at sea to judge the probability. None of us is very expert. Yeah, well, how are we supposed to judge at the 12 v. 6 stage whether the empirical likelihood that it in fact came from a financial institution crosses the plausibility stage? If you can't, if you don't have facts, if you don't have facts that you can put into the plausibility analysis, then that's failure to state a claim. It's just that we have to assess whether it's a plausible claim. Well, you know, it came from a financial institution. It parrots the legal standard. That standing alone is not a basis for treating it as implausible. No, but depending on the factual circumstances, you may well need more to come to the conclusion that it was a financial institution that directly gave it over to the government, which is what you need to trigger the claim. I mean, it can come indirectly. I mean, of course it comes indirectly from a financial institution. The financial institution issued the number. Right. But that's nowhere near enough to trigger the direct transfer that is necessary under the statute. And you're not relying on the terrorism provisions under the statutes as an alternative way in which the government came about the information? The terrorism statutes as exceptions to the article? No, no. We haven't argued that. Okay. No further questions, we would ask the Court to affirm the judgment below. Okay. Thank you. Ms. Ross, we used up all your time, so we'll give you back two minutes. The government has emphasized in its argument that it's just a justiciability argument. And I would just want to point out that we do not obviously think that this case is moot or that any of the allegations here are moot. I think this often happens in sort of cases that ultimately seek expungement or amendment where someone is concerned with because they've had an injury in the past, they're going to continue to have that injury in the future. And that's precisely what makes this case not moot. Mr. Abdel-Fattah alleges, just as the plaintiffs in the no-fly list cases allege, that he may not be able to board a flight into the United States in the future. And he also alleges that he may not be able to obtain his work authorization, his work documents in the future. And we think that those allegations are sufficient to make this case continue to be justiciable. I also want to touch on something that the government emphasized and that I know the Court has had some questions about on the accuracy of the information at issue. And I think it's important not to lose that while the information itself may be accurate, it's inherently inflammatory and prejudicial. We know in the record at JA-60 that Mr. Abdel-Fattah has been called, quote, an exact match on a terrorism lookout because of this information, that the TEEX record was itself created because of this information, and that he's been linked with Mr. al-Rababa, and it's put in the records that he may be a terrorist or a national security threat. And so while we don't know whether those characterizations themselves remain in TEEX, we do know that this information causes those characterizations. And so it's not just accurate information. It's highly prejudicial accurate information. On a related note, the government suggested that Mr. Abdel-Fattah is sort of asking for the right to come in and change the government's records and forever be forgotten by the government. And that's not what we're saying. Just as the information has to be considered sort of for its possible impacts, I think that there are a variety of ways in which this case could be redressed based on the government keeping the information just in a different manner. Could you elaborate on that? One thing I've thought about is this case will presumably produce an opinion, which will have that fact in F-3rd. I've been a little puzzled throughout about what expungement would amount to, which had seemed to me the focus of your argument. Well, we would note that we sort of, as we say in the briefs, we use expungement as the district court here did to mean expungement or amendment of the records. The district court again noted that the court claim was for expungement or amendment. And I think Mr. Abdel-Fattah's concern is not so much, as in many of the cases that the government cites, that it will become public that he used to live with this man. It's much more that the government will continue to use this information to harm him. And that is how expungement or amendment could be effective. Because, for example, the government could- An amendment would have it, the record would have a caution, don't jump to too many conclusions from this little factoid. That's one possibility, Your Honor. But I also think- One would hope, I mean, I know it would be a futile hope, but one would hope that that would be true of government officials. One would think, but it's not even sort of jumping to conclusions. It's just that we don't know enough on the current record to even know whether, when Mr. Abdel-Fattah's link to this prior man comes up, anything tells the immigration officer or the other government agent who sees it that this has been investigated in the past. And so it's sort of continually going through that process that results in this harassment. But I would note also that one other alternative that the district court could consider as part of this flexible consideration is that the government could be ordered to retain this information in case it happens to become useful in the future, but do so in a manner or in a location where it's not as easily accessible to every single line-level official with whom Mr. Abdel-Fattah might interact. And so that would- Restore the silos that supposedly played a role in 9-11 and spent a decade supposedly eliminating. Obviously we would not want to do that, Your Honor. But we do think that there may be a way to sort of just take this one level below the pop-up on everyone's screen or contextualize it. But again, we don't think at this point that the district court or this court really has enough facts about either Mr. Abdel-Fattah's allegations or, quite frankly, how the system works, which is something that the government would be expected to put in once we got past the motion to dismiss stage. Can I just get your response to the government's argument that for purposes of the Due Process Clause, there's not a sufficient enough harm here? Yes, my response would be that we obviously disagree with that, Your Honor. I think that just as in, as I said earlier, in the no-fly list cases, for example, the courts have found that there is a sufficient due process interest in the threat that you will not be able to fly in the future and fly internationally in the future. And so that, obviously, we would say is comparable to this case where Mr. Abdel-Fattah makes that same allegation. I also think that in the future issues with his employment authorizations and his ability to work in the United States, that he has made sufficient allegations of threats that would carry through as due process interests. But the threats of what? That he would lose his green card, that he would not be permitted to work in the United States because he wouldn't have access to those documents. But that he would actually be disabled from working in the United States or that he would have to wait for a few hours while it gets sorted out to show that he can work in the United States? No, I think that he would actually be unable to work in the United States. So, for example, it didn't take a few hours the last time he needed documentation. It took three years. And so I think it's, you know, if it were to take anything near that amount of time. That one seemed puzzling to me because the allegation, and I know we're dealing with the pro se plaintiff, but we're doing the best we can to piece together the claim. But the allegation is just that I wasn't able to work for three years. And it's hard to know what to make of that because it's not necessarily tied even to the rest of the complaint. We can infer that it probably means to be. But does it really mean? Are we supposed to really assume that what it means is literally there was no ability for me to obtain any work for three years because I didn't have a physical green card or something? I think at the motion to dismiss it. That's the way you would have us construe that allegation. I think at this stage, yes, Your Honor. The reason why I would do that is, one, because that's what he says. He says he was deprived of the ability to work. But also because we know that the access to this document is required. I mean, anybody who's ever gone into work on the first day of a new job knows that they have to provide proof of their ability to work in the United States. In addition, DHS's website will tell you that if you were a legal permanent resident, you need to carry that authorization with you. And so I think it's entirely plausible that a person in Mr. Abdel-Fattah's situation who didn't have access to that document for three years would not be able to work during that time. And I'm sorry, I have one final question about the international travel. I'm sorry. I don't want to belabor it too much. But is it enough just to allege that you've had an infringement of your national right to travel internationally without actually saying that you want to travel internationally? Well, I think, first of all, that Mr. Abdel-Fattah really sort of, if you piece his allegations together, and I agree we're dealing with a per se plaintiff and we have to do that a little bit here, he says that he has not been able to see his brothers and sisters in a decade right sort of in the midst of his travel allegations. And so I do think that we can infer that what he's saying is that he would like to travel, but for this inability and this fear, he would travel to go see his family. And we assume that his brothers and sisters live overseas. I don't even know if that, maybe that might well be true. I do assume that, Your Honor, because he is a native of Jordan. And, again, it sort of only makes sense for this to be in the midst of his travel allegations if that's where they are. To go back to, you know, the allegation that he was deprived of the right to work, he says that several times. But there are also factual statements there which indicate that the government came to his place of employment. That's one of the claims of harassment. So how do we figure all of that out? He obviously is working if they're coming to his place of employment. So what does it mean to say he was deprived, that he didn't have the document or that he actually wasn't working? Right. So I certainly take Your Honor's point that the allegations are at times in tension with each other. I think one issue is that I believe he says they came to his work on one occasion. And so I don't think we can infer from that that he was necessarily working and able to work for the entire period. But I also think that even if you sort of took all of the allegations together and thought, okay, maybe he was working part of this time and that's enough, he would not have been able to switch jobs during that time. We know that because he wouldn't have a green card and you need that, as I said, on your first day of work. And so his rights certainly would be interfered with in that way, if nothing else. But I do think that given sort of the long time frame that we're talking about here, the fact that in a three-year period there was one visit to a place of work, I don't think sort of negates the allegation that he was unable to work for much of that period. All right. Thank you. I know that you were appointed to represent the appellant in this case, and the court appreciates your assistance. Thank you. The case will be submitted.
judges: Brown, Srinivasan, Williams